Ladies and gentlemen, we have four cases on the calendar this morning, a case from the Court of Veterans' Appeals, a case from the Patent Office, a vaccine case from the Court of Federal Claims, and a government employee case, which will not be argued and will be submitted on the briefs. In addition, after the first two cases, we will adjourn briefly, maybe not so briefly, and return with a somewhat modified panel. The break may constitute up to a half hour, for which we apologize, but it's unavoidable, and we would ask you to at least counsel for the Antwerp media case to stay close, and we will return as soon as we can. The first case is Clyde Harriman v. the Secretary of Veterans Affairs, 2001-71-41. Ms. Booth, good morning. BOOTH Good morning, Your Honor. If it pleases the Court, my name is Sandra Booth. I'm the attorney on behalf of the appellant, Clyde Harriman. The first issue with respect to the 1952 rating decision and the CUE request for revision turns on the following. Mr. Harriman filed a CUE request for revision in 2000, alleging that the 1952 rating decision failed to adjudicate a reasonably raised claim based on his traumatic head injury, and post-concussion syndrome. The VA regional office denied... BOOTH Because, Your Honor, what we contend that the VA regional office, or that the agency, has never made an adjudication of CUE based on the failure to adjudicate theory developed by Robertson and its progeny. The original, the veteran did certainly make that claim in 2000, but the agency construed it as a duty-to-assist theory. And denied it very correctly under a duty-to-assist theory because, as this Court's Cook decision, en banc Cook decision held, breach of the duty-to-assist is not remediated by the CUE procedure. I understand the core of your argument on this, and it's based, I suppose, principally, at least, on the paragraph on Appendix 68 that refers to reasons and bases and contains a reference to the duty-to-assist. It's the next to last paragraph on that page. If I understand your argument, that's the point at which the agency is focusing in on what it deems to be the claimed issue, which, you say, was not failure to adjudicate, even though failure to adjudicate had been the basis for the claim. Well, failure to adjudicate and duty-to-assist are two disparate theories. I understand. The question is, did the agency, in this 2000 ruling, address the failure to adjudicate? And if it did, then we're finished. And if it didn't, then you say that does not foreclose the current CUE claim. Well, in my view, it did not, because the duty-to-assist theory, again, is separate, as a matter of law, from the failure to adjudicate. But where I'm going with this is, the discussion in the next to last paragraph is clearly a discussion of duty-to-assist. So, to that extent, that does seem to be focused on duty-to-assist. But the last paragraph looks to me as if that is focused on the question of whether there was anything in the 52 claim to adjudicate, and the conclusion was no, and therefore, that would seem to address the failure to adjudicate, would it not? Well, I don't think so, Your Honor, because the agency, at that point, failed to address the sympathetic reading requirement, which would have been part and parcel of the failure to adjudicate theory, unrelated, of course, to the duty-to-assist theory. So, the observation that the medical records did show that he sustained head injuries would actually support the failure to adjudicate, but the agency doesn't get there, the agency doesn't discuss it. And certainly, though, the board, I think, later discusses that the agency found that there was no claim made. But again, it applies to an incorrect legal standard for the failure to adjudicate theory, because whether there was a claim articulated is not the correct standard. The correct standard is whether there was a claim taking into consideration not only the veteran's specific assertions, but also the evidence that is before the VA. But isn't that exactly what they did? They may not have done it in great detail, but what was the point of talking about what the medical records showed versus what they did not show, if they really weren't addressing the failure to adjudicate claim? Well, the service medical records, whether they indicated any residual disability would be relevant to whether the veteran had a current disability at the time he filed his claim. It would not be relevant to whether or not he had a claim for the head injury resulting from his combat trauma. So, I think that the sentence that follows that is more telling, that there was no disability claimed as a direct result of his head injuries until June 1994. Under the failure to adjudicate, it's not required that he articulate that claim. So, by virtue of the agency not addressing any of those issues that are relevant to the failure to adjudicate, couldn't that just be a factual point to support the notion that there was nothing in the medical records that showed a current injury, and then saying, and on top of that, he never made an actual claim until much later. So, it supports the notion that the medical records don't show that injury. Well, if he didn't have a current injury, then the appropriate step, assuming that, and again, we've never had a planning effect on whether or not this is a failure to adjudicate based on the Robertson standards, but let's assume that he did have, the evidence did support that there was a claim, then the board would have, the agency would have at least had to have made an adjudication at that point. What about the 1979 claim for a secondary service connection for a heart connection? Hasn't that been remanded, and so isn't that non-final? I don't believe so, Your Honor. It was remanded, not the 1979 claim. The issue in the 1979 claim is whether or not it was even final, and the court has held that it is. Well, what was remanded? The veteran requested reopening of that claim around, I think, 2006, unknown to me when I got involved in this case. We had two claims. It was unknown to me when you got involved in this case. That doesn't matter. What I'm saying is we have two somewhat connected claims, one for attacking the finality of the 1979 writing decision, and the other requesting reopening. So, the VA regional office did reopen the 2006 claim, denied it on the merits in 2007. Was that for a heart condition? That was for a heart condition, yes. The veteran did appeal that. The board dismissed it on the grounds that the veteran did not present any arguments. In fact, argument was presented about the adequacy of the agency's medical opinion developed in connection with the reopened claim. And that's the matter that Chief Judge Castle set aside the board's dismissal, remanded for the board to make a decision. Why doesn't the decision letter on page 882 of the joint appendix, which addressed the newly submitted evidence, why doesn't that render the 1979 decision final? Because it doesn't address, it renders it final as to his anxiety. It also references a foot condition from which he's service-connected at, although I'm not sure why that's even relevant. But it doesn't make any reference to his cardiac claim. Well, the cardiac claim had been referenced in the initial decision and rejected. And if I read, and it was a little difficult to read, but I think I translated it correctly, I read the doctor's progress notes on 83 through 85. And that reads to me like a medical history in which there was no further finding of anything beyond simply noting his medical history and then noting that Dr. Trask had made the finding that his letter indicates he made. Where is the evidence that is supplemental new evidence of a cardiac problem in that medical history? There is no other evidence at that time period, and we're not arguing that his evidence was new material. What we are contending is, and the court's recent decision in bond supports this very strongly, is that any time VA receives a submission of new evidence during that 3.156B time period, which is one year after the rating decision or at any time before the final appellate decision is made, and this qualifies, VA must make a determination. Right, and they did. And your problem is, well, they didn't make a determination that specifically referenced the cardiac issue. Correct. So if they had written down here, cardiac, and he also continued to reject the cardiac claim, then that would be clearly final, right? Well, not unless, it would not be final if the veteran then decided to address, you know... If that was the end of the matter, then we wouldn't be here arguing about finality. I think that's correct. So the question is, since there was a response, the question is, was there anything in the new material, if there is no reference in the new material to anything having to do with cardiac condition, then they wouldn't have to respond, and we continue to reject the cardiac condition argument, right? Well, we're getting to a very factual, in practice that would be a very particular factual argument to make as to whether or not the veteran thought it had something to do with his claims, or whether VA thinks it had something to do with a claim. In this case, because it does reference his cardiac condition as related to his anxiety, his service-connected anxiety, the VA at least had to make a determination. Now, there's nothing about the cardiac claim in that June 1979 letter that you're referring to, And I don't think it comes within the deemed-denied provisions, particularly the interpretation of the veterans' court in the Ingram case, which this court cited with approval in Adams. And Ingram said that in determining whether there are two claims pending and determining whether the denial of one was a denial of the other, you have to look at the reasons VA gave for denying that claim. So, again, if you look here at the reasons, in the Ingram case, the VA denied pension and told him it wasn't permanent, and the veterans' court said that's not a denial of his 1151 claim, which is a medical negligence claim, because the permanency has nothing to do with medical negligence. I need to go back, though. I don't think you've answered Judge Bryson's question, and that's what's troubling me here, is that what in the new submission, the interim submission before this second rejection letter, where does that new submission contain medical evidence of the cardiac condition and its connection to the nervous condition? I don't think it contains anything that's new and material. It is later in time, so it's new in that regard. I don't think it's material. But the veteran had to know that. The veteran was entitled to be informed of that. That's what Bond says, that no matter whenever a submission is made during the appeal period, which this is, the question for 3.156B is whether the evidence is new and material and not whether the claimant caused that. But then when I'm going to say, so you're saying that, for instance, if the veteran has a claim for head injuries, a heart problem, and foot problem, and then after the initial rejection, he submits some medical records relating to the foot problem, and you're saying that the VA has to then go back and say, not only do we reject your request for anything relating to your foot problem, but we reject your request as to the things that the medical records don't relate to. As the regulation is written and as Bond construed it, I would say that is correct. I do think VA could appropriately amend its regulation or revise its regulation to limit that duty to evidence that specifically addresses a particular claim. But they haven't done that. So as the regulation is written right now, yes, I would say that's correct. And I think that would be the end of my rebuttal.   We'll give you three minutes, and then I'll ask any submission of evidence within that one-year time period would generate the requirement to provide notice. Your group, as you can see, you've just about assumed your rebuttal time. If you've asked your questions, we'll give you three minutes back. Thank you, Your Honor. And Ms. Hossford, you'll need a couple of extra minutes. You may have them. May it please the Court. With respect to the 1952 claim, this Court lacks jurisdiction to hear Mr. Harriman's argument on appeal because the review of the Veterans Court's consideration of the race judicata issue would require an application of law to fact, which is not within the scope of your jurisdiction under Section 7292d2. So you're saying we lack jurisdiction on that claim for two reasons? Well, for one reason. Because 7292d2 precludes the Court from considering an application of law to fact, which is exactly what the Court of Appeals for Veterans Claims did in this case and the Board. They said the 2006 claim was not new because it was looking at that claim and comparing it to the 2000 claim, they were virtually identical. So this Court doesn't have jurisdiction over the content of a claim. And her reply brief is... But whether race judicata applies is a legal conclusion, is it not? That's the argument that Mr. Harriman made in his reply brief. But you have to look at the cases that were cited. That Cromalloy case cites the vouch decision. Remember, these are Cromalloy with a patent case where 7292 didn't apply. In the vouch decision, the Court expressly acknowledged that in determining whether there's race judicata, you have to look at the fact. So it's an application of law to fact. So as far as... Didn't we just say, Reese, this year in Newgard, that if it's a determination of whether race judicata acts as a bar, that that's a determination that this Court has jurisdiction to make and then proceed to make that determination? In that case, the Court was determining whether race judicata even applied to acute claims. It wasn't whether race judicata was correctly applied. But we ultimately affirmed that it was correctly applied. We actually exercised jurisdiction over it, did we not? So you're saying we should affirm, not dismiss, that aspect of the claim. You should... Well, the Court should find it has no jurisdiction over the question of whether there was race judicata between the 2000 and 2006 claims. My understanding of the Newgard case... Race judicata is a question of law. It would say we should affirm. Is it a question of law? Well, you should definitely do. The Court has no jurisdiction, but assuming there is jurisdiction, the Court should affirm. And there's a couple of reasons for that. The record is clear that the claims made in 2000 and 2006 were virtually identical. Judge Bryson pointed out that in both J82 and 2000, as well as in 2006, the rating office, or the regional office, considered the direct question of whether or not Mr. Harriman had raised a claim of disability based on head injury in 1952. In both cases, it found that he did not. Mr. Harriman likes to focus on that second-to-last paragraph on page 82, which talks about the duty to assist. But that's not really relevant. I mean, even under the line of cases that Mr. Harriman is trying to rely on, that's Mayerage, Moody, Andrews, the fact that the Court may... that the Court has to sympathetically... or, I'm sorry, the fact that the regional office has to sympathetically read a claim doesn't mean that he can be based on an ultimate failure to develop that claim or order a medical report or anything else that would fall under the duty to assist. In this case... How do you respond to Sister's argument that, in fact, that last paragraph, that is too cryptic to actually constitute a decision on the failure to adjudicate? I don't believe that paragraph is too cryptic. I mean, see, first... and you have to read it in context of the entire... of the last two paragraphs. First, the Court... the rating office cited Hugo B. Brown. That case applies both to duty to assist and whether or not there's been a development of a claim. And it acknowledges that, at that time, a development of a claim could be a basis for a few if you had persuasive evidence. It then goes on to say, and we have to look at it in the context of Hugo, service medical records did show the veteran sustained head injuries but did not indicate any residual disability. My colleague was saying something about, you know, residual disability doesn't mean that he had a disability. I wasn't sure I followed that argument, but this is exactly what the sympathetic reading requirement mandates of the regional office. They looked at the record to see whether or not there was any residual harm or disability claimed in 1952 when he brought his claim for a nervous disorder. They said the record only showed that he had had a head... he'd been hit in the head while he was in service and that he had headaches during service. There was no claim of any kind about any sort of residual disability after service when he made his claim for service connection. You're using the term claim broadly to mean any indication in any medical record or otherwise, as opposed to an assertion made by him at the time. Exactly. If you look at pages 108 through 111 of the joint appendix and you look at the medical report that was done in connection with his October 1952 claim, it says that everything was normal, including his head. And there were no complaints of any problems with his head. The only complaint that had been made was when he was in service in the hospital saying he had headaches. There was no residual disability claimed at the time he actually filed his application for benefit. So that last sentence of the last paragraph... Reflects that finding. Reflects that finding as opposed to a finding that we are looking solely to the point in time that an actual formal claim was made. Correct. They looked at the records. And the only source of any problem with Mr. Harriman's head was while he was in the hospital, during service, and it was headaches. They looked at the entire record. And in 2006, the same exact determination was made. That's why the board said, you claim no new theory of Q here. And so there was a very Q decodic. And that's what the veterans court found. The only other argument that Mr. Harriman made in his brief on this is that he claimed that the 2000 request for Q was actually addressing a 1995 decision rather than the 1952 decision. But the Court of Appeals for Veterans Claims expressly addressed that argument and rejected it. That was a finding of fact. That's not within the court's jurisdiction. And if you look at the documents, it's clear that the claim in 2000 was for Q based on the 1952 decision and that the 2000 decision denying that claim for Q was also addressed in 1952. What about the hospitalization? Moving on to the finality argument. We would agree with what Judge Wrightson and Judge Lurie were implying, that the record of 1979 of Mr. Harriman's submission of additional evidence does not show that he was making an additional claim based upon his claim for secondary service for heart condition. Mr. Harriman's counsel has admitted that the record didn't reflect that there was any further request for consideration of the heart condition. The regional office found that and the board found that. However, we would also argue that the court doesn't even need to get to that issue. What Mr. Harriman is claiming here is that there was never a finding made as to whether or not the evidence he submitted in April 1979 was new and material as to his alleged heart condition. The board in 2008 expressly, at date 8-26, expressly decided that issue. It said, Mr. Harriman argued that the VA never decided whether his evidence submitted in April 1979 was new and material as to the heart condition. The review and findings were not. That's the November 15, 2008 board decision? Yes. Well, isn't that the board decision that is ultimately under review here? Right. The Court of Appeals, under its claim, said Mr. Harriman, you never appealed that nor do you allege error in that finding. So Mr. Harriman never appealed that finding when he went to the Federalist Court and that finding stands and there's no error in it. There's no allegation of error in that finding even today. All that Mr. Harriman claims is that in 1979 he never got a final answer on whether or not his evidence was new and material. Well, even after the court's bond decision, that evidence is positive. Well, what about the bond case and the interpretation of the regulation? Your opposing counsel argues that the regulation requires, in a situation in which multiple claims have been made and rejected but new evidence comes in, that any further communication from the agency, as I understood her argument, any further communication from the agency must address all of the claims initially made and rejected, even if the new evidence does not include new evidence that's pertinent to one or more of the claims. A very narrow reading of bond could support that argument. But you have to look at the facts of bond. In bond, Mr. Bond was ultimately, a couple of years later, awarded service connection for the disability that he said was the subject of new and material evidence but he was not given service connection back to the original claim and the court ultimately found that because this new and material evidence related to the entirety of your first claim, the DA had to at least determine whether it was new and material for purposes of all of the claims he made. That's our reading of bond. That was not the position we took before the court in that case, but what I would argue here is that the court doesn't even need to reach that issue because the March 2008 board decision expressly found that evidence admitted in April 1979 was not new and material as to the heart condition. At best, bond has some doubt on the whole implicit denial argument that we were making. So is being new and material evidence satisfying that test a predicate for entitlement to a further decision on a claim in which you submitted new evidence in the one year period after the original rejection? Yes. Okay. If it's new and material, then it relates back to the claim that was decided in the year. If it's not new and material? If it's new and material and is not material, then no obligation to respond at all. Or you can construe, I mean, to the extent that the veteran comes back and says, I want you to consider the heart condition, then it would be considered a new claim for the heart condition. It wouldn't relate back. Once it's decided that the evidence is not new and material, if the veteran wants to reopen the heart condition, then he has to file a new informal claim for consideration of the heart condition and try to allege some other basis. But you're not going to get an effective date back to the original claim. It's all about effective date. That's what really Bond was focused on. So the only other issue that is before the court, which really wasn't discussed during Mr. Harriman's counsel's argument, is the whole question of whether or not there were two in 1979 decisions. Our argument is that that requires consideration of the weighing of the evidence that's not within the court's jurisdiction. Mr. Harriman argued that, in reliance upon the Fountain decision, that because there was only one opinion of nexus in the record, the court has to find that it was adequate. But that's not applicable in this case because not only did the opinion look at the rash, it looked at nexus. The board found that, although the opinion addressed nexus, it was addressing it in the context of a proximate cause standard. I'm sorry, yeah, a proximate cause standard. And the evidence supported, at best, aggravation of the heart condition. And the extent that Mr. Harriman argued that no rationale was required in support of a medical opinion in 1979, that's just not supported inside of the regulation. And as a reply brief, Mr. Harriman says, well, that regulation says if it's inadequate, you have to send it back. But here, we not only had the inadequacy of the rationale, but we also had the finding of no proximate cause and, at best, aggravation. Unless the court has other questions, you're asked at either time. Thank you, Ms. Hawthorne. Ms. Booth has three minutes. Thank you for the extra time, Your Honor. Just a quick couple of remarks. Number one, regarding the March 2008 EVA finding that the evidence was not new and material, that's absolutely irrelevant. The board has no jurisdiction over the 1979 decision. Determination was not made. Consequently, a notice of disagreement was not filed and a notice of disagreement is a condition for receiving it to board jurisdiction. Further, even if an argument could be made that the board had, in 2008, had jurisdiction to decide if the 1979 evidence was new and material, the board cannot, as a matter of law, make that decision unless the veteran waives his right to have new evidence initially considered at the VA regional office level. I believe that's the court's DAV case interpreting the VA's regs, and I did not cite that in the brief, but I will file a supplemental citation upon my return to the office. The veteran never waived his entitlement to have initial consideration of new evidence at the regional office level, so it's absolutely irrelevant what the board found on the nature of the evidence. Is it true that the Secretary's obligation to file a subsequent denial of a claim when new evidence has been submitted depends upon whether that new evidence that's submitted within a year satisfies the new and material evidence standard? No, I would disagree with that, Your Honor. The agency always has an obligation to tell the veteran what its determination was, even if it's not favorable to the veteran, and perhaps even more importantly, when it's not favorable to the veteran. The notice obligation arises under 38 CFR 3.103E in 1979. Substantially the same language is in paragraph A today, 3.103A, and it specifically requires the Secretary to give notice of any determination affecting the payment of benefits. The VA must not only tell the veteran of the decision, but also the reasons, the right to appeal. Okay, the question is what flows as a consequence from the failure to respond to the veteran's subsequent submission. I mean, suppose that the veteran files a subsequent submission that we could all agree just plainly does not include anything that a reasonable person would consider to be new and material evidence with respect to a particular claim. Now, and the VA just doesn't submit anything back to the veteran saying, we continue to deny your claim. Does that mean that claim remains open for all time or at least until? I would see that as being the case under the bond interpretation because the VA has to make that determination if this evidence is so lacking that it has no value whatsoever. They've got to make that decision. What the regulation then says is that you have to tell the veteran about that decision. Even if he's got a crazy idea, you've got to tell him it's a crazy idea. Charles, and my time's about up, but I would refer the Court also to the Charles case, which specifically said that under a 3.156B case, since the case had to go back for a new determination, the issuance of a supplemental statement in that case, but procedurally, whatever the vehicle is, Charles plainly supports that the VA must get notice and until that notice is given, finality is interrupted. That actually raises another question that I had. I'm not sure when the various procedural requirements came into play temporarily from the beginning of the VA compensation system until now, but when did the supplemental statement of the case and, well, for that matter, even statement of the case obligation come into play? Because, for example, the original 1979 ruling doesn't contain what we would now look for as a statement of the case, so it was just a rating decision, unless we are missing something here on the record. When did that obligation come into play? The rating decision itself, you're not, well, I'm referring to a technical term in the art of statement of the case, which is the document filed after a notice of disagreement. Right, and there was no notice of disagreement here, so no statement of the case required, and therefore no supplemental statement of the case. Right, but the procedural vehicle where the case is not in appellate status, I would think it could be something as simple as a letter, which is what the VA did with respect to the anxiety claim. But do you happen to know when the statement of the case and supplemental statement of the case requirements came into the system at all? I was sort of confused when I read Charles and saw references to supplemental statement of the case. I'm a little bit confused by that, too. It did not seem to track with the procedure in Charles. But I think my take on what the court was saying in Charles was that you have to make a decision, and the court identified a vehicle. There was no decision at all in Charles. Right. But you're not arguing that the problem here was there was no supplemental statement of the case, because there was none. There was no statement of the case to start with. Right. The problem is that the response that came in June should have, at minimum, adverted to the cardiac complaint. Right. Should have so informed the veteran that the cardiac was also. Thank you. Ms. Books, we'll take the case under advisement. Thank you, Your Honor.